**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE CWA/ITU NEGOTIATED PENSION PLAN,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN PLUS PRINTERS, INC.,<br><br>Defendant. | Civil Action No. 19-12794 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff The Board of Trustees of the CWA/ITU Negotiated Pension Plan's ("Plaintiff") Motion for Default Judgment against Defendant American Plus Printers, Inc. ("Defendant"). (ECF No. 6.) The Court has carefully considered Plaintiff's submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Default Judgment is granted.

**I.    BACKGROUND[1]**

Plaintiff, as fiduciary for the CWA/ITU Negotiated Pension Plan (the "Plan"), brings this action "to collect unpaid withdrawal liability owed to the Plan by [D]efendant" under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Compl. ¶ 1, ECF No. 1.) "The

---

[1] When considering a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Plan is a 'multi-employer [pension] benefit plan' within the meaning of ERISA[,]" 29 U.S.C. §§ 1002(37)(A), 1301(a)(3). (*Id.* ¶ 6.) Plaintiff is a fiduciary and "the sponsor of the Plan within the meaning of ERISA[,]" 29 U.S.C. § 1301(a)(10). (*Id.* ¶¶ 2, 7.) Plaintiff administers the Plan in Colorado Springs, Colorado. (*Id.* ¶ 8.)

The Communication Workers of America, AFL-CIO (the "Union") and Defendant "entered into a collective bargaining agreement for the period January 1, 2003 through December 31, 2005, and continuing from year to year thereafter unless terminated by written notice at least 60 days prior to the expiration [of the agreement]" (the "CBA"). (*Id.* ¶ 10.) Under the CBA, Defendant was required "to make contributions to the Plan for work performed by covered employees." (*Id.* ¶ 11.) On or about September 17, 2015, the parties executed a Memorandum of Agreement that extended the term of the CBA through June 30, 2019. (*Id.* ¶ 12.)

"The Plan was established and is governed by an Agreement and Declaration of Trust adopted as of September 8, 1966, and as amended from time to time since then" (the "Trust Agreement").[2] (*Id.* ¶ 13.) Under the Trust Agreement, employers who are delinquent in making required contributions to the Plan "shall be liable to the Plan for interest on the amount of delinquent contributions due and owing at a rate equal to the prime rate of interest plus two [] percentage points" and shall be further liable "for liquidated damages in an amount equal to twenty percent [] of the unpaid contributions, as well as the Plan's attorneys' fees and costs." (*Id.* ¶ 14.)

On or about June 10, 2016, the Plan sent correspondence (the "June 10, 2016 Correspondence") to Defendant stating that "the Plan had terminated [Defendant] as a contributing employer to the Plan due to its failure to cure its delinquency to the Plan." (*Id.* ¶ 16; *see also* June 10, 2016 Correspondence, Ex. C to Castle Decl., ECF No. 6-10.) On or about

---

[2] (*See* Trust Agreement, Ex. G to Declaration of Lori Castle ("Castle Decl."), ECF No. 6-14.)

2

February 8, 2017, the Plan sent correspondence (the "February 8, 2017 Correspondence") to Defendant noting that it had assessed Defendant's liability for withdrawal from the Plan to be "$138,240, payable in 80 quarterly payments of $1,728[,] with the first payment due and payable . . . on or before April 1, 2017." (Compl. ¶ 17; *see also* Feb. 8, 2017 Correspondence, Ex. D to Castle Decl., ECF No. 6-11.) On or about April 12, 2017, the Plan sent Defendant correspondence (the "April 12, 2017 Correspondence") stating that Defendant "had failed to make the first installment of its withdrawal liability payment obligation" and "further notified [Defendant] that if this delinquency was not cured within 60 days, the full withdrawal liability [would] be accelerated." (Compl. ¶ 18; *see also* Apr. 12, 2017 Correspondence, Ex. E to Castle Decl., ECF No. 6-12.) To date, Defendant "has not made any of its required installment payments or sought to timely arbitrate the withdrawal liability assessment. . . ." (Compl. ¶ 19.) Plaintiff contends that because Defendant failed to arbitrate the issue of liability it has "waived its right to challenge the assessed withdrawal liability." (*Id.* ¶ 20.)

On May 22, 2019, Plaintiff filed a Complaint against Defendant, seeking an award of "the entire unpaid balance of the assessed withdrawal liability in the amount of $138,240[;]" in addition to "interest at a rate equal to the prime interest rate plus two [] percentage points from April 1, 2017, through the date judgment is entered; liquidated damages equal to $27,648[]; and the Plan's reasonable attorneys' fees and costs[.]" pursuant to ERISA, as amended, the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"). (*Id.* ¶¶ 2, 22.) Defendant failed to respond or otherwise plead.

On June 19, 2019, Plaintiff e-filed an affidavit of service for the Complaint and summons, dated June 14, 2019. (ECF No. 4.) On August 19, 2019, Plaintiff requested the Clerk of the Court

3

make an entry of default against Defendant. (ECF No. 5.) On August 20, 2019, the Clerk entered default against Defendant. On October 25, 2019, Plaintiff filed the instant motion. (ECF No. 6.)

## II.  LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure allows a court "to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990). "A consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks omitted); *see also Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) ("[D]efendants are deemed to have admitted the factual allegations of the [c]omplaint by virtue of their default, except those factual allegations related to the amount of damages."). Whether to grant default judgment is left "primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

Prior to entering default judgment, the Court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010)). "A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case." *Trs. of United Food & Commercial Workers Union Local 312 Benefit Fund v. Meg Tackle Imports, Inc.*, No. 18-11715, 2019 WL 5064196, at *1 (D.N.J. Oct. 9, 2019) (quoting *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)). Federal Rule of Civil Procedure

4(h)(1)(B) provides that a corporation must be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Further, the Court must determine "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling and Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008) (citation omitted).

If these initial requirements are met, then the Court must consider three factors to determine whether entry of a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied[;] (2) whether the defendant appears to have a litigable defense[;] and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. S55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

### III.   DISCUSSION

#### A.   Jurisdiction

As a threshold matter, the Court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics*, 705 Fed. App'x at 108 (citation omitted). A federal court has subject matter jurisdiction over disputes arising under federal law and those between parties of diverse citizenship. 28 U.S.C. §§ 1331, 1332.

For a district court to have federal question jurisdiction over a dispute, the dispute must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, the

matter arises under 29 U.S.C. §§ 1381–82, and 1451.[3] The Court, accordingly, has subject matter jurisdiction over this matter.

As to personal jurisdiction, "[a] court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant." *Lampe*, 952 F.2d at 700–01. Plaintiff filed an affidavit of service for the Complaint and summons. (ECF No. 4.) The Court, therefore, has personal jurisdiction over Defendant.

### B. Legitimate Cause of Action

After determining jurisdiction is proper, the Court must evaluate "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling and Family Servs., Inc.*, 543 F. Supp. 2d at 365.

Plaintiff alleges that Defendant violated § 515 of ERISA, 29 U.S.C. § 1145, by failing to make contributions to the Plan, as required under the CBA, and brings this action under § 4301(b) of ERISA, 29 U.S.C. § 1451(b) to compel Defendant to pay its unpaid withdrawal liability and other damages. (Compl. ¶ 2.) Section 515 of ERISA "requires an employer to contribute to a multi[-]employer benefit plan in accordance with the 'terms and conditions' set forth in the collective bargaining agreement." *Trs. of the N.J. B.A.C. Health Fund v. Org Contracting*, No. 13-5854, 2015 WL 1730171, at *2 (D.N.J. Apr. 14, 2015) (citation omitted); *see also* 29 U.S.C. § 1145. In the Complaint, Plaintiff alleges that Defendant was delinquent with their contributions to the Plan, failed to cure this delinquency, was terminated as a contributing employer, and failed to remit payment for its unpaid withdrawal liability. (Compl. ¶¶ 16–18.)

---

[3] "The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability." 29 U.S.C. § 1451.

6

Taking the allegations of the Complaint as true, Plaintiff has established a legitimate cause of action under § 515 of ERISA.

### C.  *Chamberlain* **Factors**

Because Plaintiff has established a legitimate cause of action, the Court must next consider the three *Chamberlain* factors to determine whether entry of a default judgment is appropriate, specifically: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195). The Court addresses each factor in turn.

"As to the first factor, '[w]hen a defendant fails to respond to a plaintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate [its] claims.'" *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (quoting *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016)). Here, Defendant has failed to participate. The Court, therefore, finds that this factor weighs in favor of granting default judgement.

As to the second factor, "[a] . . . defense[ ] will be deemed meritorious when the allegations of the pleadings, if established at trial, would . . . constitute a complete defense." *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 869–70 (3d Cir. 1984). When a defendant fails to appear, a court may find it has "failed to raise any defenses for the Court's consideration." *Id.*; *see also United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (noting that "the Court cannot consider [d]efendant's defenses if any exist because [d]efendant failed to respond to this action"); *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (stating that "because [defendant]

has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses"). Because Defendant has failed to appear, the Court is unable to consider any defenses it may have raised. The Court, accordingly, finds that this factor weighs in favor of granting default judgment.

Finally, the Court considers "whether Defendant['s] delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. "[C]ulpable conduct means actions taken willfully or in bad faith." *DiPiazza*, 2016 WL 7015625, at *2 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983)). A failure to respond "at the very least . . . reflects willful conduct." *Id.*; *see also Tryg Ins.*, 2017 WL 11491955, at *3 (holding that "[w]hile [d]efendant's complete inaction may not necessarily reflect bad faith, at the very least it reflects willful conduct." (internal quotation omitted)). Here, Defendant was properly served and failed to respond. The Court, therefore, finds that this failure is due to its willful conduct. The Court, accordingly, finds the third factor weighs in favor of granting default judgment.

### D. Damages

Having found that Plaintiff established a legitimate cause of action for a violation of ERISA, and having found the *Chamberlain* factors weigh in favor of granting default judgment, the Court turns to the issue of damages.

After finding a party is entitled to default judgment, a court may conduct a hearing to determine the proper amount of damages. Fed. R. Civ. P. 55(b)(2). "The district court has considerable latitude in determining the amount of damages. The court is not required to conduct a hearing 'as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.'" *Cornwell Quality Tools Co. v. Blanco*, No. 16-5086, 2018 WL 2441750, at *2 (D.N.J. May 30, 2018) (quoting *Super 8 Worldwide, Inc. v. Urmita, Inc.*, No. 10-5354, 2011 WL 2909316,

8

at *2 (D.N.J. July 18, 2011). "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Id.* (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

Under ERISA, a civil action "to compel an employer to pay [unpaid] withdrawal liability" is treated the same as an action to collect delinquent contributions under § 1145. *See* 29 U.S.C. § 1451(b). ERISA mandates an award of damages to a successful plaintiff, providing, in relevant part,

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [. . .] of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant
> [. . .]
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). The Court addresses each category of damages in turn.

### 1. Unpaid Withdrawal Liability

"The MPPAA was enacted out of a concern that ERISA did not adequately protect multiemployer pension plans from the adverse consequences that result when individual employers terminate their participation or withdraw." *Int'l Union of Operating Engineers, Local 68, AFL-CIO v. RAC Atl. City Holdings, LLC*, No. 11-3932, 2013 WL 353211, at *5 (D.N.J. Jan. 29, 2013)

9

(quoting *SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pa. & W. Md. Area Teamsters & Emp'rs. Pension Fund,* 500 F.3d 334, 336 (3d Cir. 2007)) (internal quotations omitted). "Withdrawal liability under the MPPAA requires that a withdrawing employer pay its share of the plan's unfunded liability . . . [so] the financial burden will not be shifted to the remaining employers." *Id.* (internal quotation omitted) (citation omitted). Under ERISA, "[i]f an employer withdraws from a multi[-]employer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). "When an employer withdraws from a multiemployer plan, the plan sponsor, in accordance with this part, shall—(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." 29 U.S.C. § 1382; *see GCIU-Employer Ret. Fund v. Harvard Press, Inc.*, No. 16-1074, 2016 WL 7411126, at *2 (D.N.J. Dec. 20, 2016). Within 90 days of receiving such a notice from a plan, an employer may request, *inter alia,* "to review any specific matter relating to the determination of the employer's liability and the schedule of payments." 29 U.S.C. § 1399(b)(2)(A)(i). "If the employer does not timely initiate arbitration, then the employer waives its right to contest liability and waives its right to contest the amount owed." *IUE Multi-Employer Pension Fund v. M & C Vending, Inc.*, No. 11-4335, 2013 WL 2007298, at *3 (D.N.J. May 13, 2013) (citing *Pension Ben. Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 726 n. 4 (1984)).

Here, Plaintiff seeks an award of unpaid withdrawal liability in the amount of $138,240. (Compl. ¶ 22.) The Court finds that Plaintiff complied with the requirements of § 1382. The June 10, 2016 Correspondence informed Defendant that Plaintiff had terminated Defendant as a contributing employer due to Defendant's failure to cure its delinquency to the Plan and that

Defendant "may now be assessed a [w]ithdrawal [l]iability for [its] net allocable share of unfunded vested benefits." (June 10, 2016 Correspondence.) The February 8, 2017 Correspondence notified Defendant that Plaintiff was demanding a "payment of withdrawal liability" and that Plaintiff had calculated Defendant's liability "to be in the amount of $194,104,"[4] payable in "[80] quarterly installments of $1,728." (Feb. 8, 2017 Correspondence.) Plaintiff further informed Defendant that its "first payment [was] due no later than April 1, 2017" and that "[d]elinquent payments may be assessed interest at the rate of 1% per month." (*Id.*) The April 12 Correspondence informed Defendant that it had failed to make the first quarterly payment of $1,728 and that, in the event of failure to cure this delinquency within 60 days, would result in "the full amount of the withdrawal liability shall become immediately due and owing." (Apr. 12, 2017 Correspondence.) To date, Defendant has not made any payments or sought to arbitrate the withdrawal liability. (Compl. ¶ 19; *see also* Castle Decl. ¶ 14.)

Having found Plaintiff established a legitimate cause of action for a violation of ERISA, and having found the *Chamberlain* factors weigh in favor of granting Plaintiff default judgment, the Court, accordingly, awards Plaintiff damages for unpaid withdrawal liability in the amount of $138,240.00.

---

[4] The Court notes that withdrawal liability stated in the February 8, 2017 Correspondence, $194,104, is inconsistent with the amount, $138,240, repeatedly stated in Plaintiff's other filings in this matter. (*Compare* Feb. 8, 2017 Correspondence *with* Pl.'s Moving Br 10, ECF No. 7 ("The February 8 [Correspondence] notified [] Defendant that it had . . . incurred withdrawal liability in the amount of $138,240.00 . . . ."); Compl. ¶ 17 ("[T]he Plan assessed a complete withdrawal liability against [Defendant] in the amount of $138,240 . . .").) The cause of this discrepancy is unclear to the Court. To the extent Plaintiff seeks an additional award, Plaintiff may file such a motion and corresponding proofs.

### 2.     Interest

Plaintiff seeks an award of interest on unpaid contributions of $26,003.00, plus an additional "$33.08 per day from October 26, 2019 through the date judgment is entered." (Pl.'s Moving Br. 11, ECF No. 7; Castle Decl. ¶ 18.)

ERISA mandates the award of "interest on the unpaid contributions" when judgment is entered in favor of a plan. *See* 29 U.S.C. § 1132(g)(2)(B). "In the event of a default, a plan [fiduciary] may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). "[I]nterest on unpaid contributions shall be determined by using the rate provided under the [P]lan. . . ." 29 U.S.C. § 1132(g)(2)(E).

Here, the Trust Agreement provides that "delinquent contributing employers shall be liable to the Plan for [] interest on the amount of delinquent contributions due and owing at a rate equal to prime rate of interest plus two percentage [] points[.]" (Castle Decl. ¶ 17; Trust Agreement 9.) The prime rate of interest during the period of April 1, 2017, the date Defendant first failed to make a payment for its unpaid withdrawal liability, through October 25, 2019, the date Plaintiff filed the instant motion, ranged from 3.75% to 5.50%. (Castle Decl. ¶ 18[5].) Plaintiff attached a spreadsheet to its Motion showing quarterly interest calculations on the unpaid withdrawal liability through October 25, 2019, with a total interest liability for the period calculated to be $26,003.00. (*Id.*; *see also* Interest Spreadsheet, Ex. H to Castle Decl., ECF No. 6-15.) The Court, accordingly, awards Plaintiff damages of $26,003.00 for that period.

---

[5] *Overdue or Defaulted Withdrawal Liability*, Pension Benefit Guaranty Corporation, A U.S. Government Agency (March 24, 2020), https://www.pbgc.gov/prac/interest/oodwl.

12

Plaintiff also requests an additional award of "$33.08 per day from October 26, 2019 through the date judgment is entered." (Pl.'s Moving Br. 11; Castle Decl. ¶ 18.) A total of 217 days elapsed between October 26, 2019, the day after Plaintiff's Motion was filed, through May 29, 2020, the day of the Court's Order.[6] The Court, accordingly, awards Plaintiff an additional $7,178.36 in damages. In total, the Court awards Plaintiff $33,181.36 in interest damages.

### 3. Liquidated Damages

Plaintiff seeks an award of $27,648.00 in liquidated damages. (Compl. ¶ 22.) In addition to an award of unpaid withdrawal liability and interest on that liability, ERISA mandates an additional award of "an amount equal to the greater of [] [1] interest on the unpaid contributions [] or [2] liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount [of unpaid contributions]. 29 U.S.C. § 1132(g)(C).

Here, in language mirroring the statute, the Trust Agreement permits an award of the greater of unpaid interest or "liquidated damages equal to 20 percent of the delinquent contributions[.]" (Trust Agreement 9.) The award Plaintiff seeks, $27,648.00, is equal to 20% of $138,240, the amount of delinquent contributions. Because this amount is greater than $26,003.00, the amount of interest on delinquent contributions, the Court awards Plaintiff $27,648.00 in liquidated damages.

### 4. Reasonable Attorneys' Fees and Costs

ERISA mandates and award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D); *see also Trs. of the N.J. B.A.C. Health Fund*, 2015 WL 1730171, at *3 ("ERISA

---

[6] The Court utilized an online resource to calculate the number of days that had elapsed. *See* https://www.timeanddate.com/date/.

13

requires that a court award attorneys' fees and costs upon a finding that an employer was delinquent in paying contributions") (citing *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 293 (3d Cir. 2007)). The party seeking attorneys' fees "must produce evidence that the hours spent and rate charged are reasonable." *Roccisano v. Twp. of Franklin*, No. 11-6558, 2015 WL 3649149, at *4 (D.N.J. June 11, 2015) (citations omitted); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Such a request must include "fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Sheet Metal Workers Local Union No. 22 v. Quality Constr. HVAC*, No. 17-7973, 2018 WL 6040267, at *3 (D.N.J. Nov. 16, 2018).

Here, Plaintiff seeks $6,847.50 in attorneys' fees and an additional $664.40 in costs. (Pl.'s Moving Br. 14.) In support of this figure, Plaintiff submitted the Declaration of Courtney J. Peterson ("Peterson Decl.") certifying the hourly rates of the professionals who rendered services, the number of hours spent, and further stating that Plaintiff received a 10% discount from the standard rates. (Peterson Decl. ¶¶ 14–15, 21–22, ECF No. 6-1.) Plaintiff also submitted a copy of its billing records for its work on the instant matter, which included detailed entries for the work undertaken. (*See* Billing Records, Ex. E to Peterson Decl., ECF No. 6-6.) The Court is satisfied that the attorneys' fees and costs requested by Plaintiff are reasonable. *See, e.g., M & C Vending, Inc.*, 2013 WL 2007298, at *4 (granting plaintiff's motion for default judgment on ERISA claim and awarding $12,525.00 in attorneys' fees and $363.76 in costs); *Quality Constr. HVAC*, 2018 WL 6040267, at *3 (awarding $5,250.00 in attorneys' fees and $400.00 in costs). The Court, accordingly, awards Plaintiff $7,511.90 in attorneys' fees and costs.

## IV.   CONCLUSION

In sum, the Court awards Plaintiff $138,240.00 for unpaid withdrawal liability damages; $33,181.36 in interest damages; $27,648.00 in liquidated damages; and $7,511.90 in attorneys' fees and costs, for a total award of $206,581.26. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: May 29, 2020